KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHEONG SAU WONG(1),<br>XU JUN LEE(2),<br><br>Defendants. | Criminal Case No. 08CR0369-JLS<br><br>Date: March 21, 2008<br>Time: 1:30 p.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS TO:<br><br>(1) COMPEL DISCOVERY;<br>(2) DISMISS DUE TO GRAND JURY INSTRUCTION; AND<br>(3) FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant U.S. Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendants Cheong Sau Wong(1) and Xu Jun Lee(2) which is based upon the files and records of this case.

//

//

//

**I**

**STATEMENT OF THE CASE**

On February 13, 2008, a federal grand jury for the Southern District of California returned a five-count Indictment, charging Defendants, Cheong Sau Wong(1) and Xu Jun Lee(2) with transportation of illegal aliens and aiding and abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). Both Defendants were arraigned on the Indictment on February 14, 2008, and entered a not guilty plea.

On February 25, 2008, Defendant(2), Xu Jun Lee, filed motions to compel discovery; and leave to file further motions. On March 7, 2008, Defendant(1), Cheong Sau Wong, filed motions to compel discovery, dismiss the indictment due to misinstruction of the grand jury and leave to file further motions. On March 10, 2008, Defendant(2) filed a motion to join the motion to dismiss the indictment due to misinstruction of the grand jury filed by Defendant(1).

**II**

**STATEMENT OF FACTS**

**A. IMMIGRATION HISTORY**

Defendant(1) is a United States citizen.

Defendant(2) is a citizen of China and a legal permanent resident of the United States.

**B. CRIMINAL AND ARREST HISTORY**

Defendant(2) has several arrests involving prostitution.

**C. ALIEN-SMUGGLING**

On January 29, 2008, at approximately 4:30 p.m., Bureau of Land Management ("BLM") Law Enforcement Rangers Cox, Nieblas and Kent, were on patrol on BLM lands, on County Road S-2, near the San Diego and Imperial County line. The rangers observed two vehicles traveling in tandem driving north on S-2. The vehicles were traveling very closely together at a high rate of speed for the road conditions. County Road S-2 has many elevation changes, curves, and blind spots. The front vehicle was a white 2004 GMC cargo van with California license plate #7H22487, the rear vehicle was a 20087 Mercury Mountaineer SUV with California license plate #6CEK721.

1. SUV Traffic Stop

Ranger Kent left his stationary position in his marked BLM law enforcement vehicle, and Rangers Cox and Nieblas left there stationary position in their BLM law enforcement vehicle, and began following the SUV and van. Due to the vehicles' high rate of speed, the rangers traveled several miles before catching up with the vehicles. When Ranger Kent was able to catch up to the vehicles, he observed the SUV pass the van on a blind curve. Ranger Kent observed the SUV cross the solid double yellow lines, overtake the van and continue driving. When conditions were safe, Ranger Kent passed the van, and as he approached the SUV, it pulled to the side of the road, onto the shoulder, before Ranger Kent activated his emergency lights and sirens.

Ranger Kent pulled in behind the SUV, activated his emergency lights, and requested a records check on the license plate. The dispatcher informed Ranger Kent that the vehicle was a rental vehicle. Ranger Kent and approached the vehicle on the driver's side and asked the driver, and sole occupant of the vehicle, Xu Jun Lee (Defendant(2)), for his driver's license and insurance information. Defendant(2) provided his California driver's license and a rental contract from Budget Rental Cars in Yuma, Arizona. Ranger Kent asked Defendant where he was coming from and Defendant(2) replied that he was coming from Yuma, Arizona. Ranger Kent asked Defendant(2) where he was going, and he replied that he was going to Julian, to visit his uncle. Ranger Kent asked if he knows where his uncle lives in Julian, and Defendant(2) responded that he does not know. When asked if he lives in Yuma, Defendant(2) responded that he lives in San Jose.

Ranger Kent returned to his service vehicle to inform dispatch of his status. When Ranger Kent returned to the vehicle, he asked Defendant(2) if he knew the person driving the van. Defendant(2) responded that it was his uncle. Ranger Kent again asked Defendant(2) why he was going to Julian, and Defendant(2) responded that he was helping his Uncle move from Yuma to Julian. Ranger Kent asked Defendant(2) why he passed his uncle in such a dangerous way, and Defendant(2) responded that his uncle was driving to slowly. Ranger Kent observed that Defendant(2) had trembling hands, and appeared to be nervous while answering questions. Ranger Kent also observed a camouflage two-way radio on the floor of the passenger floorboard and a cell

phone under the passenger seat. Ranger Kent then escorted Defendant(2) from the location where Defendant(2) pulled over, to the location of the white van which had been pulled over by Rangers Nieblas and Cox.

Upon arriving at the location of the white van, Ranger Kent observed that Rangers Nieblas and Cox were removing persons from the white van. Ranger Kent also observed that individuals were inside a wooden box in the back of the van. Ranger Kent conducted a pat down of Defendant(2) for officer safety and handcuffed Defendant(2). During the patdown, Ranger Kent discovered a large bundle of one hundred dollar bills in front pants pocket of Defendant(2). Ranger Kent discovered several bundles of U.S. currency in a bag on the front passenger seat of the SUV. The total amount of currency found on the person of Defendant(2) was $1,200.00. The total amount of currency in the bag was $11,300.00. Ranger Kent asked Defendant(2) who owned the money and Defendant(2) replied that some was his and some was not. Ranger Kent issued a state citation to Defendant(2) for false statement, unsafe passing and crossing the double yellow lines.

2. <u>Cargo Van Traffic Stop</u>

Law Enforcement Rangers Nieblas and Cox left their stationary position in a marked BLM law enforcement vehicle and began following the SUV and van. Upon reaching the position of the cargo van, Ranger Nieblas observed the SUV pass the van. After the SUV passed the cargo van, Ranger Nieblas observed that the cargo van was swerving toward the fog line. Ranger Nieblas initiated a traffic stop by activating his emergency lights and siren. Ranger Nieblas approached the vehicle on the passenger side, and Ranger Cox approached on the driver’s side. Ranger Nieblas ordered Defendant(1), CHEONG SAU WONG, to turn off the vehicle. Ranger Nieblas observed that the entire passenger area of the van was filled with furniture and a computer. Ranger Nieblas also observed that Defendant(1) appeared to be nervous, his whole body was shaking and his arms were flinging all over the steering wheel.

Ranger Nieblas asked Defendant(1) if there were any other occupants in the vehicle, and Defendant(1) responded that there were not. Ranger Nieblas asked what was in the back of the van and Defendant(1) responded that he had a computer in the back. Ranger Nieblas asked

Defendant(1) for permission to search the vehicle and Defendant(1) consented. Ranger Nieblas also asked Defendant(1) if he was traveling with the SUV and he replied that he was not. Ranger Nieblas communicated with Ranger Kent and was informed of the statement by Defendant(2) that he was traveling with Defendant(1).

While searching the back of the cargo van, Ranger Nieblas heard movement in the back of the vehicle. While Ranger Cox continued to search the vehicle, Ranger Nieblas again asked Defendant(1) if there were people inside the van and he replied no. Ranger Nieblas asked Defendant(1) where he lives Defendant(1) replied that he lives in Yuma. Defendant(1) further stated that he was coming from Yuma and that he was going to Julian. Defendant(1) denied knowing the driver of the SUV.

During the vehicle search, the Rangers found a wooden box. Ranger shined a flashlight through the crack in the box and determined that people were hidden inside the box, but they could not exit the box because a sofa was resting on top of the box, and the rear of the box was blocked by two washers secured tightly by the rear doors. The sofa was removed and Ranger Cox broke open the wooden box. Ranger Nieblas observed 4 males and one female cramped inside the box. All were barefoot, soaked in sweat, and flushed. The female appeared to by unconscious, and it took several loud orders to get her to respond. There was no food or water inside the box.

Ranger Nieblas found a receipt for the purchase of the vehicle for $10,000.00 cash inside the passenger door panel. Ranger Cox found a camouflage two-way radio matching the radio in the SUV, and two cell phones in the drivers area of the cargo van. Rangers also found Chinese and Korean currency in the vehicle. Ranger Nieblas cited Defendant(1) for providing false information, people riding in the vehicle where not designated, and no proof of insurance.

Ranger Nieblas contacted United States Border Patrol and Border Patrol Agent Eduardo Vasquez and Samuel Morales responded to the scene. Border Patrol Agents then transported the Defendants and the material witnesses to the El Centro Border Patrol Station for processing.

//

//

**D. <u>DEFENDANT'S STATEMENT</u>**

Immigration and Customs Enforcement ("ICE") Agents Paul Lewenthal and Chris Miller responded to the El Centro Border Patrol Station to assist. The ICE agents advised each Defendant of his <u>Miranda</u> rights and each Defendant invoked.

**E. <u>MATERIAL WITNESS'S STATEMENT</u>**

The ICE agents conducted interviews with each of the material witnesses utilizing the services of Customs and Border Protection language line translator.

Material Witness Ligin Lin stated that he is a citizen of China and that he had no immigration documents that would allow him to enter the United States. Lin stated that he traveled from China to the United States by way of bus then boat. Lin stated that he believes that he has been in the United States for approximately 2 months. Lin stated that a friend of his made arrangements for his passage and that he did not know the amount that was to be paid. Lin stated that he did not know where he was traveling in the United States. Lin also stated that he was inside the compartment for approximately 2 hours and that he was not aware of who put him there.

Material Witness Liangeng Jiang stated that he is a citizen of China and that he too did not have immigration documents. Jiang stated that he left China approximately 2 months ago and traveled to an unknown place. Jiang stated that his uncle made his travel arrangements and that he did not know how much was to be paid. Jiang also stated that he was inside the compartment for 2 to 3 hours and that he could barely breathe, that there was nothing to drink, that he could not move, and that he felt hot and sweaty.

Material Witness Yuhai Wang stated that he also is a citizen of China with no documents to enter the United States. Wang stated that he left China approximately one year ago and traveled to unknown countries. Wang stated that a friend of his made arrangements for his passage and that he did not know the amount that was to be paid. Wang also stated that he was inside the compartment for approximately 1 hour, that he could not breathe, that he could not move, and that he could not get out of the compartment.

Material Witness Xuzai Dong, stated that he also is a citizen of China with no documents to enter the United States. Dong stated that he left China approximately 6 months ago and traveled

to unknown countries by plane. Dong stated that he did not know where he was going in the United States. Dong also stated that he could not move inside the compartment, that he felt hot, that he could not breathe.

Material Witness Ming Zhou Zhu stated that she also is a citizen of China with no documents to enter the United States. Zhu stated that he left China in October of 2007 and traveled to unknown countries by plane, train and bus. Zhu stated that a friend of hers made arrangements for her passage and that she did not know the amount that was to be charged. Zhu also stated that she could not breathe, that she could not move, and that she could not get out of the compartment.

## III

## UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

#### (1) The Defendants' Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendants' written statements that are known to the undersigned Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes

where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(2) Arrest Reports, Notes and Dispatch Tapes**

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

**(3) Brady Material**

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated

in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record.**

The United States has already provided Defendant with a copy of her criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) Evidence and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(c) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8) Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

//

**(9) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(10) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify. The United States opposes Defendant's request to turn over the immigration files for the material witnesses. The United States will review the files to determine if any evidence to which Defendant is entitled is contained in the immigration files.

**(11) Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(12) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(13) Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The Government is not aware of any "tips" provided by anonymous or identified persons that resulted in Defendant's arrest.

The Government objects to Defendant's request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(14) Witnesses Favorable to the Defendant**

As stated earlier, the Government will continue to comply with its obligations under Brady and its progeny. Other than the material witness in this case, the Government is not aware of any witnesses who have made an "arguably favorable statement concerning the defendant or who could not identify him or who w[ere] unsure of his identity, or participation in the crime charged."

**(15) Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted). Further, Defendant is not entitled to the Grand Jury transcripts.

**(16) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(17) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(18) Agreements Between the Government and Witnesses**

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

**(19) Informants and Cooperating Witnesses**

The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant who is a material witness in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

**(20) Bias by Informants or Cooperating Witnesses**

As stated above, the United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(21) Law Enforcement Personnel Files**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(22) TECS Reports**

Defendant is not entitled to TECS reports unless the Government seeks to introduce the TECS reports as 404(b) evidence. Prior border crossings do not fall within the scope of 404(b) unless offered for a purpose consistent with 404(b). Defendant's interpretation of Vega is simply wrong. Vega merely holds that, to qualify under Rule 404(b), an act need not be intrinsically "bad." United States v. Vega, 188 F.3d 1150 (9th Cir. 1999). Vega does not purport to overrule all the prior Ninth Circuit (and other courts of appeals) authority that universally holds that, for Rule 404(b) to apply, the "act" must relate to the defendant's character. If in fact Vega purports to overrule prior precedent, it is not good law and should not be followed. The Vega panel did not

have the authority to overrule prior Ninth Circuit cases. See e.g., Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001).

**(23) Expert Summaries**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

**(24) Law Enforcement Training Records, Performance Goals and Policy Awards**

Defendant makes a blanket request for all law enforcement training manuals, instructions and information regarding policy goals and awards relating to the detection of contraband. Defendant provides no authority for this request, nor does Defendant articulate any basis for the discovery of this information. The Government opposes this request.

**(25) A-File Review of Material Witness**

Defendant is not entitled to view the A-File of the material witness. The Government will review the material witness's A-File and provide to Defendant any information they are entitled to receive.

**(26) Residual Request**

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

**(27) Grand Jury Transcripts**

Defendant has not demonstrated a particularized need for the Grand Jury transcripts. The Government will provided Defendant with any prior statements of witnesses that it intends to call at trial.

//

//

**(28). <u>Preservation of Evidence</u>**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

Again, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

**B. <u>THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED</u>**

It bears noting that the Hon. John A. Houston and the Hon. Barry Ted Moskowitz, both recently issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here. <u>See</u> Order of Judge Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as Appendix 4. The United States adopts the reasoning in this Court's previous order and requests that the Court reach the same result. Attached as Appendix 1 is the "Partial Transcript" of the Grand Jury Proceedings. Attached as Appendix 2 is a redacted "Supplemental Transcript" which records the relevant portions of the voir dire proceedings.

This Court, and other courts of this district, have repeatedly rejected the arguments raised by Defendant before, and we ask the Court to do so again.

**C. <u>LEAVE TO FILE FURTHER MOTIONS</u>**

The Government does not oppose this motion, as long as future motions are based upon evidence or information not now available.

//

## VI

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Defendant's motions, except where unopposed.

DATED: March 18, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHEONG SAU WONG(1),<br>XU JUN LEE(2),<br>Defendant. | Criminal Case No. 08CR0369-JLS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**

**1. COMPEL DISCOVERY;**
**2. DISMISS INDICTMENT; AND**
**3. FILE FURTHER MOTIONS.**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Leila Morgan, Esq., Federal Defenders of San Diego**
Leila_Morgan@fd.org
**Steven E. Feldman, Esq., Law Offices of Steven E. Feldman**,
sfeldman77@san.rr.com

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 18, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP