**STEVEN E. FELDMAN**
State Bar No. 56979
934 23rd Street
San Diego, California 92102
(619) 232-8649

Attorney for Defendant
**XU JUN LEE**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(Honorable Janis L. Sammartino)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>XU JUN LEE,<br>Defendant. | Case No. 08CR0369-JLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |

## STATEMENT OF THE CASE

Xu Jun Lee and co-defendant Cheong Sau Wong have been charged in a 15-count Superseding Indictment as follows:

| Count | Identity of Alien | Charge |
|---|---|---|
| 1 | Ming Zhou Zhu | 8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. § 2 |
| 2 | Ming Zhou Zhu | 8 U.S.C. § 1324(a)(2)(B)(iii); 18 U.S.C. § 2 |
| 3 | Ming Zhou Zhu | 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) |
| 4 | Liangneng Jiang | 8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. § 2 |
| 5 | Liangneng Jiang | 8 U.S.C. § 1324(a)(2)(B)(iii); 18 U.S.C. § 2 |
| 6 | Liangneng Jiang | 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) |
| 7 | Yuhai Wang | 8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. § 2 |
| 8 | Yuhai Wang | 8 U.S.C. § 1324(a)(2)(B)(iii); 18 U.S.C. § 2 |
| 9 | Yuhai Wang | 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) |
| 10 | Xuzai Dong | 8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. § 2 |
| 11 | Xuzai Dong | 8 U.S.C. § 1324(a)(2)(B)(iii); 18 U.S.C. § 2 |
| 12 | Xuzai Dong | 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) |
| 13 | Liqiu Lin | 8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. § 2 |
| 14 | Liqiu Lin | 8 U.S.C. § 1324(a)(2)(B)(iii); 18 U.S.C. § 2 |
| 15 | Liqiu Lin | 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) |

## STATEMENT OF FACTS

Xu Jun Lee incorporates, as through fully set forth herein, the Statement of Facts set forth in his previously-filed Motion to Compel Discovery and supplements it with specific information relating to this motion as contained in discovery provided by the government to date [1/]

## ARGUMENT

## EVIDENCE SEIZED AS A RESULT OF THE UNLAWFUL SEARCH OF THE SUV DRIVEN BY XU JUN LEE MUST BE SUPPRESSED

### A. The Time Line of the Detention, Search, and Arrest

Discovery provided to date by the government raises significant questions concerning when Xu Jun Lee was arrested, when he is alleged to have given consent to search the vehicle he was driving, and whether the search of the SUV was contemporaneous with the arrest. Because the reports are not clear as to the timing of these events, and because timing is key to resolving the issue of the lawfulness of the searches, counsel for Xu Jun Lee has requested additional discovery such as the dispatch tape(s) which should shed light on the timing of these events and should enable counsel to represent Xu Jun Lee more effectively at the time of the evidentiary hearing on this motion.

According to the report of Bureau of Land Management Ranger Bradley Kent, at about 4:30 p.m on January 27, 2008, he observed two vehicles (a van and an SUV) driving in tandem and at a high speed at on S-2 near the San Diego-Imperial County lines. Both Kent and Rangers Nieblas and Cox (who were in a separate vehicle) pulled onto S-2 to catch up with the two vehicles. Kent eventually caught up with the SUV and reported seeing it pass the van on a blind curve, crossing the double yellow line. Nieblas and Cox followed the van.

The SUV pulled onto the shoulder and Kent ran a routine records check via his radio

---

1 Counsel for Mr. Lee again notes that this statement is based solely on discovery provided to date by the government and is not adopted by Mr. Lee.

and learned the SUV was a rental car. He then approached Xu Jun Lee, who was the driver and sole occupant of the SUV, and asked for his license, registration, and insurance. Mr. Lee complied and provided those documents as well as a Budget rental agreement. Kent ran a records check, which was negative for warrants. He then proceeded to question Lee about where he was coming from, where he was going, why he was going to Julian, and where he and his uncle lived.

Kent returned to his vehicle to advise dispatch of his status and then returned to the SUV and continued to question Xu Jun Lee. While on the passenger side of the SUV, Kent questioned Lee about whether he knew the driver of the van; Lee said it was his uncle. Kent questioned Lee again about why he was going to Julian and why he had passed the van in such a dangerous area of the road. While questioning Lee, Kent reported seeing a camouflaged two-way radio on the passenger floor and a cell phone under the passenger seat. He then notes in his report that he asked Lee for consent to search the vehicle. There is no indication in his report of whether Xu Jun Lee consented to the search.

As Kent began his search of the SUV, he heard Nieblas and Cox perform a traffic stop of the van. Kent told the two rangers that the stops were related. Due to what he considered were inconsistences in the statements of Lee and Wong (i.e., Lee said the driver of the van was his uncle and Wong said he did not know Lee), Kent decided to move the stop of Lee to the location where the van had been stopped to further investigate. Kent told Xu Jun Lee that he was going to hold onto his driver's license and that he would escort Lee to where his uncle had been stopped.

Once Kent and Lee arrived at the location where the van had been stopped, Kent saw people being removed from the van and was told by Nieblas that they had found undocumented Chinese nationals concealed inside the van. At that point in time, Kent "commanded" Lee to exit the SUV and handcuffed him.

Kent compared the two-way radio found in the van with the one found in the SUV and noticed they were the same make and on the same channel. Kent did a patdown search of Lee and discovered a large bundle of $100 bills in Lee's front pants pocket and found more

large bundles of money in a bag on the passenger's side of the SUV. Inside the SUV, he also found five cell phones and currency from various Asian countries. Xu Jun Lee was asked who the money belonged to and said some was his and some was not. The citation was issued.

According to the report of Border Patrol Agent Vasquez, the BLM rangers called for assistance at 5:45 p.m. Both Lee and Wong were ultimately taken to the El Centro Border Patrol Station at 11:30 p.m. and *Mirandized.*

**B. Questioning on Matters Unrelated to a Traffic Stop Which Unnecessarily Prolong the Duration of a Detention Render the Detention Unlawful and a Violation of the Fourth Amendment Right to be Free From an Unreasonable seizure**

In the case of a traffic stop, questioning by law enforcement on matters unrelated to the traffic stop which unnecessarily prolongs the duration of the detention renders the stop an unlawful detention in violation one's Fourth Amendment right to be free from an unreasonable seizure. (*See United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2008).)

The question of whether BLM Ranger Kent's questioning of Xu Jun Lee on matters unrelated to the reason for the traffic stop unnecessarily prolonged the duration of the detention is one that will have to be addressed at the conclusion of the evidentiary hearing given the current ambiguity in the reports provided to date by the government.

**C. The Government Has the Burden to Prove There was Consent to Search**

**1. There is Nothing in the Record to Support a Finding of Consent**

Because the search of the SUV driven by Xu Jun Lee was without a warrant, the government bears the burden of demonstrating that the search was lawful. (*See United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) (per curiam). If the government relies entirely on consent for the legality of this search, it is required to prove the existence of an effective consent.

Although Kent states in his report that he asked Xu Jun Lee for consent to search the SUV, in fact there is nothing in the report prepared by Ranger Kent, or in any other discovery

provided to date by the government, to demonstrate that Xu Jun Lee in fact consented to the search.

Where the validity of a search rests on consent, as is true in the instant case, the government has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. (*Florida v. Royer*, 460 U.S. 491, 497, 75 L.Ed.2d 229, 103 S.Ct. 1319 (1983).) This is "a burden that is not satisfied by showing a mere submission to a claim of lawful authority." (*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329, 60 L.Ed.2d 920, 99 S.Ct. 2319 (1979); *Schneckloth v. Bustamonte*, 412 U.S. 218, 233-234, 36 L.Ed.2d 854, 93 S.Ct. 2041 (1973).) Whether there has been consent to search "is not lightly to be inferred and the government always bears the burden of proof to establish the existence of effective consent." (*United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990); see also *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990).)

**2. The Government Has the Burden to Prove Consent Was Voluntary**

Whether consent is voluntary involves consideration of several factors, none of which is dispositive. (*See United States v. Tolias*, 548 F.2d 277, 278 (9th Cir. 1977).). The factors to be considered include: (1) whether the defendant was in custody at the time of the consent; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether the defendant was told a search warrant could be obtained. (*United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988).) Of these five factors, only the second (i.e., whether officers had their guns drawn) appears not to have been present at the time of the alleged consent.

The determination of voluntariness of consent involves consideration of the totality of the circumstances surrounding the search. (*United States v. Lindsey*, 877 F.2d 777, 783 (9th Cir. 1989); *United States v. Licata*, 761 F.2d 537, 544 (9th Cir. 1985).) Compliance with a demand by law enforcement is not consent. (*Bumper v. North Carolina*, 391 U.S. 543, 548-549, 20 L.Ed.2d 797, 88 S.Ct. 1788 (1968).)

/

Consent obtained under color of the badge is implicitly coercive. (See *United States v. Page*, 302 F.2d 81, 84 (9th Cir. 1962).) In *United States v. Shaibu, supra,* 920 F.2d at p. 1427, the Court interpreted failure to object to the police officer's thrusting himself into the defendant's apartment as more likely suggesting submission to authority than implied or voluntary consent. Such submission is not effective consent. (See also *United States v. Winsor*, 846 F.2d 1569, 1573, n.3 (9th Cir. 1988).)

Even if there is no showing of implicit coercion, the government may not establish consent to search from the defendant's failure to object to the search. "To do so would be to justify entry by consent and consent by entry. This will not do." ( *United States v. Shaibu, supra,* 920 at p. 1427; *Johnson v. United States*, 333 U.S. 10, 17, 92 L.Ed. 436, 68 S.Ct. 367 (1948).)

**D. Search of the Closed Container in the SUV was Unlawful Because It was not Contemporaneous with the Arrest**

Xu Jun Lee was under arrest or the functional equivalent of arrest when Ranger Kent took Lee's driver's license and escorted him to the location of the stop of the van. Custody implies a degree of control and is determined as an objective reasonable person test. (*United States v. Crisco*, 725 F.2d 1228, 1231 (9th Cir. 1983).) Custody may exist if "a reasonable innocent person in such circumstances would conclude that after a brief questioning, he or she would not be free to leave." (*United States v. Eide*, 875 F.2d 1429, 1437 (9th Cir. 1989); *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985).) The inquiry is conducted in light of the totality of circumstances. (*United States v. Hudgens*, 798 F.2d 1234, 1236 (9th Cir. 1986).) [2/]

A law enforcement officer may search an automobile and closed containers therein as a roughly contemporaneous incident to a lawful arrest. (*United States v. McLaughlin*, 170 F.3d 889, 891-893 (9th Cir. 1999).) The bag on the passenger seat of the SUV driven by Lee

---

2 The authority cited on the issue of the definition of custody, or the functional equivalent of custody, concerns appellate claims involving *Miranda*-related issues and is equally applicable to the context of a search.

was a closed container and was not searched contemporaneous with his arrest.[3/] "A warrantless search is roughly contemporaneous to a lawful arrest and valid if the arrest and 'the initial search were all one continuous series of events closely connected in time.'" (*Id.*, at p. 893.)

A search incident to arrest is valid after a short time has elapsed between the time of the arrest and the time of the search, probably not constituting more than a few minutes. (*United States v. Turner*, 926 F.2d 883, 888 (9th Cir. 1991).) In *United States v. Hudson,* 100 F.3d 1409, 1420 (9th Cir. 1996), the Ninth Circuit held a search incident to arrest was valid where three minutes passed between the time of the arrest and the time of the search.

To qualify as an exception to the warrant requirement, the search incident to an arrest must pass what has been called the "critical inquiry" of "whether the search . . . was properly limited to the area within [the defendant's] immediate control at the time of his arrest." (*United States v. McConney*, 728 F.2d 1195, 1207 (9th Cir. 1984).) Officers may search closed containers found within the area of the arrestee's immediate control contemporaneously with the arrest. (*United States v. Andersson,* 813 F.2d 1450, 1456 (9th Cir. 1987), *disapproved on other grounds in United States v. Dozier*, 826 F.2d 866, 871 (9th Cir. 1987).) The authority to search closed containers exists even though the container may be such that it could hold neither a weapon nor evidence of criminal conduct and "does not depend on what a court may later decide was the probability in a particularly arrest situation that weapons or evidence would in fact be found." (*New York v. Belton, supra,* 453 U.S. at p. 461.) The Ninth Circuit has not required that the arrestee remain near the location or item being searched or that he be capable of acquiring a weapon or destroying evidence at the time of the search. (*United States v. Hudson, supra,* 100 F.3d at p.1420.) The search incident exception does not depend on a defendant's actual ability to grab items. (See *United States v. Moorehead*, 57 F.3d 875, 877-878 (9th Cir. 1995); *United States v. Lorenzo*, 867 F.2d 561 (9th Cir. 1989).)

---

3 A container is any object capable of holding another object. (*United States v, Belton,* 453 U.S. 454, 461, n.4, 69 L.Ed.2d 768, 101 S.Ct. 2860 (1981).)

In the case of a warrantless search of a closed container that is not incident to an arrest, there must be not only probable cause but exigent circumstances. (*See United States v. Johnston*, 497 F.2d 397, 398-399 (9th Cir. 1974).) There is nothing in the record to support a finding of exigent circumstances.

**CONCLUSION**

There is nothing in the report of BLM Ranger Bradley Kent to support a finding of consent. Although he writes he asked for consent, he does not note whether it was given. Furthermore, the government cannot meet its burden of proving any consent that might have been given was voluntary, therefore the search of the SUV at the initial detention site was unlawful.

Xu Jun Lee was under arrest at the very latest at the time he was "escorted" to the site where the van had been detained. As to the subsequent search of the SUV at the site where the van was detained, the search was not contemporaneous with his arrest, therefore the search of both his person and his vehicle were unlawful.

For all of the above reasons, as well as argument and authority to be developed and presented to this Court once requested discovery has been provided and ambiguities in the chronology of events have (hopefully) been clarified by the testimony of the agents at the evidentiary hearing, counsel for Xu Jun Lee moves to suppress evidence seized as a result of the unlawful searches.

DATED: June 5, 2008

Respectfully submitted,

*s/Steven E. Feldman*
STEVEN E. FELDMAN
Attorney for Defendant
XU JUN LEE
sfeldman77@san.rr.com