KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHEONG SAU WONG(1),<br>XU JUN LEE(2),<br><br>Defendants. | Criminal Case No. 08CR0369-JLS<br><br>Date: June 20, 2008<br>Time: 1:30 p.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:<br><br>(1) SUPPRESS EVIDENCE.<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant U.S. Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendant Xu Jun Lee(2) which is based upon the files and records of this case.

//

//

//

## I

## STATEMENT OF THE CASE

On February 13, 2008, a federal grand jury for the Southern District of California returned a five-count Indictment, charging Defendants, Cheong Sau Wong(1) and Xu Jun Lee(2) with transportation of illegal aliens and aiding and abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). Both Defendants were arraigned on the Indictment on February 14, 2008, and entered a not guilty plea.

On February 25, 2008, Defendant(2), Xu Jun Lee, filed motions to compel discovery; and leave to file further motions. On March 7, 2008, Defendant(1), Cheong Sau Wong, filed motions to compel discovery, dismiss the indictment due to misinstruction of the grand jury and leave to file further motions. On March 10, 2008, Defendant(2) filed a motion to join the motion to dismiss the indictment due to misinstruction of the grand jury filed by Defendant(1).

On June 5, 2008, Defendant(2), Xu Jun Lee, filed a motion to suppress the evidence seized as the result of the search of Defendant(2)'s vehicle.

## II

## STATEMENT OF FACTS

### A. IMMIGRATION HISTORY

Defendant(1) is a United States citizen.

Defendant(2) is a citizen of China and a legal permanent resident of the United States.

### B. CRIMINAL AND ARREST HISTORY

Defendant(2) has several arrests involving prostitution.

### C. ALIEN-SMUGGLING

On January 29, 2008, at approximately 4:30 p.m., Bureau of Land Management ("BLM") Law Enforcement Rangers Cox, Nieblas and Kent, were on patrol on BLM lands, on County Road S-2, near the San Diego and Imperial County line. The rangers observed two vehicles traveling in tandem driving north on S-2. The vehicles were traveling very closely together at a high rate of speed for the road conditions. County Road S-2 has many elevation changes, curves, and blind spots. The front vehicle was a white 2004 GMC cargo van with California license plate

#7H22487, the rear vehicle was a 20087 Mercury Mountaineer SUV with California license plate #6CEK721.

1. <u>SUV Traffic Stop</u>

Ranger Kent left his stationary position in his marked BLM law enforcement vehicle, and Rangers Cox and Nieblas left there stationary position in their BLM law enforcement vehicle, and began following the SUV and van. Due to the vehicles' high rate of speed, the rangers traveled several miles before catching up with the vehicles. When Ranger Kent was able to catch up to the vehicles, he observed the SUV pass the van on a blind curve. Ranger Kent observed the SUV cross the solid double yellow lines, overtake the van and continue driving. When conditions were safe, Ranger Kent passed the van, and as he approached the SUV, it pulled to the side of the road, onto the shoulder, before Ranger Kent activated his emergency lights and sirens.

Ranger Kent pulled in behind the SUV, activated his emergency lights, and requested a records check on the license plate. The dispatcher informed Ranger Kent that the vehicle was a rental vehicle. Ranger Kent then approached the vehicle on the driver's side and asked the driver, and sole occupant of the vehicle, Xu Jun Lee (Defendant(2)), for his driver's license and insurance information. Defendant(2) provided his California driver's license and a rental contract from Budget Rental Cars in Yuma, Arizona. Ranger Kent asked Defendant(2) where he was coming from and Defendant(2) replied that he was coming from Yuma, Arizona. Ranger Kent asked Defendant(2) where he was going, and he replied that he was going to Julian, to visit his uncle. Ranger Kent asked if he knows where his uncle lives in Julian, and Defendant(2) responded that he does not know. When asked if he lives in Yuma, Defendant(2) responded that he lives in San Jose.

Ranger Kent returned to his service vehicle to inform dispatch of his status. When Ranger Kent returned to the vehicle, he asked Defendant(2) if he knew the person driving the van. Defendant(2) responded that it was his uncle. Ranger Kent again asked Defendant(2) why he was going to Julian, and Defendant(2) responded that he was helping his Uncle move from Yuma to Julian. Ranger Kent asked Defendant(2) why he passed his uncle in such a dangerous way, and Defendant(2) responded that his uncle was driving to slowly. Ranger Kent observed that

Defendant(2) had trembling hands, and appeared to be nervous while answering questions. Ranger Kent also observed a camouflage two-way radio on the floor of the passenger floorboard and a cell phone under the passenger seat. Ranger Kent then escorted Defendant(2) from the location where Defendant(2) pulled over, to the location of the white van which had been pulled over by Rangers Nieblas and Cox.

Upon arriving at the location of the white van, Ranger Kent observed that Rangers Nieblas and Cox were removing persons from the white van. Ranger Kent also observed that individuals were inside a wooden box in the back of the van. Ranger Kent conducted a pat down of Defendant(2) for officer safety and handcuffed Defendant(2). During the patdown, Ranger Kent discovered a large bundle of one hundred dollar bills in front pants pocket of Defendant(2). Ranger Kent discovered several bundles of U.S. currency in a bag on the front passenger seat of the SUV. The total amount of currency found on the person of Defendant(2) was $1,200.00. The total amount of currency in the bag was $11,300.00. Ranger Kent asked Defendant(2) who owned the money and Defendant(2) replied that some was his and some was not. Ranger Kent issued a state citation to Defendant(2) for false statement, unsafe passing and crossing the double yellow lines.

2. Cargo Van Traffic Stop

Law Enforcement Rangers Nieblas and Cox left their stationary position in a marked BLM law enforcement vehicle and began following the SUV and van. Upon reaching the position of the cargo van, Ranger Nieblas observed the SUV pass the van. After the SUV passed the cargo van, Ranger Nieblas observed that the cargo van was swerving toward the fog line. Ranger Nieblas initiated a traffic stop by activating his emergency lights and siren. Ranger Nieblas approached the vehicle on the passenger side, and Ranger Cox approached on the driver's side. Ranger Nieblas ordered Defendant(1), CHEONG SAU WONG, to turn off the vehicle. Ranger Nieblas observed that the entire passenger area of the van was filled with furniture and a computer. Ranger Nieblas also observed that Defendant(1) appeared to be nervous, his whole body was shaking and his arms were flinging all over the steering wheel.

Ranger Nieblas asked Defendant(1) if there were any other occupants in the vehicle, and Defendant(1) responded that there were not. Ranger Nieblas asked what was in the back of the van and Defendant(1) responded that he had a computer in the back. Ranger Nieblas asked Defendant(1) for permission to search the vehicle and Defendant(1) consented. Ranger Nieblas also asked Defendant(1) if he was traveling with the SUV and he replied that he was not. Ranger Nieblas communicated with Ranger Kent and was informed of the statement by Defendant(2) that he was traveling with Defendant(1).

While searching the back of the cargo van, Ranger Nieblas heard movement in the back of the vehicle. While Ranger Cox continued to search the vehicle, Ranger Nieblas again asked Defendant(1) if there were people inside the van and he replied no. Ranger Nieblas asked Defendant(1) where he lives Defendant(1) replied that he lives in Yuma. Defendant(1) further stated that he was coming from Yuma and that he was going to Julian. Defendant(1) denied knowing the driver of the SUV.

During the vehicle search, the Rangers found a wooden box. Ranger shined a flashlight through the crack in the box and determined that people were hidden inside the box, but they could not exit the box because a sofa was resting on top of the box, and the rear of the box was blocked by two washers secured tightly by the rear doors. The sofa was removed and Ranger Cox broke open the wooden box. Ranger Nieblas observed 4 males and one female cramped inside the box. All were barefoot, soaked in sweat, and flushed. The female appeared to by unconscious, and it took several loud orders to get her to respond. There was no food or water inside the box.

Ranger Nieblas found a receipt for the purchase of the vehicle for $10,000.00 cash inside the passenger door panel. Ranger Cox found a camouflage two-way radio matching the radio in the SUV, and two cell phones in the drivers area of the cargo van. Rangers also found Chinese and Korean currency in the vehicle. Ranger Nieblas cited Defendant(1) for providing false information, people riding in the vehicle where not designated, and no proof of insurance.

Ranger Nieblas contacted United States Border Patrol and Border Patrol Agent Eduardo Vasquez and Samuel Morales responded to the scene. Border Patrol Agents then transported the Defendants and the material witnesses to the El Centro Border Patrol Station for processing.

**D. DEFENDANT'S STATEMENT**

Immigration and Customs Enforcement ("ICE") Agents Paul Lewenthal and Chris Miller responded to the El Centro Border Patrol Station to assist. The ICE agents advised each Defendant of his Miranda rights and each Defendant invoked.

**E. MATERIAL WITNESS'S STATEMENT**

The ICE agents conducted interviews with each of the material witnesses utilizing the services of Customs and Border Protection language line translator.

Material Witness Ligin Lin stated that he is a citizen of China and that he had no immigration documents that would allow him to enter the United States. Lin stated that he traveled from China to the United States by way of bus then boat. Lin stated that he believes that he has been in the United States for approximately 2 months. Lin stated that a friend of his made arrangements for his passage and that he did not know the amount that was to be paid. Lin stated that he did not know where he was traveling in the United States. Lin also stated that he was inside the compartment for approximately 2 hours and that he was not aware of who put him there.

Material Witness Liangeng Jiang stated that he is a citizen of China and that he too did not have immigration documents. Jiang stated that he left China approximately 2 months ago and traveled to an unknown place. Jiang stated that his uncle made his travel arrangements and that he did not know how much was to be paid. Jiang also stated that he was inside the compartment for 2 to 3 hours and that he could barely breathe, that there was nothing to drink, that he could not move, and that he felt hot and sweaty.

Material Witness Yuhai Wang stated that he also is a citizen of China with no documents to enter the United States. Wang stated that he left China approximately one year ago and traveled to unknown countries. Wang stated that a friend of his made arrangements for his passage and that he did not know the amount that was to be paid. Wang also stated that he was inside the compartment for approximately 1 hour, that he could not breathe, that he could not move, and that he could not get out of the compartment.

Material Witness Xuzai Dong, stated that he also is a citizen of China with no documents to enter the United States. Dong stated that he left China approximately 6 months ago and traveled

to unknown countries by plane. Dong stated that he did not know where he was going in the United States. Dong also stated that he could not move inside the compartment, that he felt hot, that he could not breathe.

Material Witness Ming Zhou Zhu stated that she also is a citizen of China with no documents to enter the United States. Zhu stated that he left China in October of 2007 and traveled to unknown countries by plane, train and bus. Zhu stated that a friend of hers made arrangements for her passage and that she did not know the amount that was to be charged. Zhu also stated that she could not breathe, that she could not move, and that she could not get out of the compartment.

## III

## UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE VEHICLE STOP AND SEARCH WERE PROPER

#### 1. The Stop

Defendant claims that the Ranger Kent was without reasonable suspicion to stop the Defendant's vehicle on January 27, 2008. Defendant argues that the reports are not clear as to the timing of the events related to the stop of the Defendant's vehicle and the stop of the co-defendant's vehicle. The reports, however, are quite clear, and as Defense counsel has been previously informed, no dispatch tapes exist related to this stop. The dispatch logs, maintained by the Federal Interagency Communications Center (FICC), have been turned over in discovery.

The report prepared by Ranger Kent related to this stop is quite clear. In his report, Ranger Kent states that when he observed the two vehicles pass his location, he pulled onto S-2, traveling northbound. When Ranger Kent caught up to the two vehicles, he observed the SUV, driven by Defendant(2), Xu Jun Lee, pass the van on a blind curve by crossing solid double yellow lines. When conditions were safe, Ranger Kent passed the van also and caught up to the SUV. Defendant(2) then suddenly pulled over onto the shoulder and stopped. Ranger Kent pulled in behind the SUV and activated his emergency lights and siren. Ranger Kent then ran a routine records check on the license plate which revealed that the vehicle was a rental vehicle.

Ranger Kent then exited his vehicle and approached the driver's side of the SUV and asked for Defendant(2)'s license, registration and insurance information. Defendant(2) complied and

handed Ranger Kent his driver license, rental contract and insurance card. Ranger Kent returned to his vehicle to conduct further records checks which were negative for wants or warrants. Ranger Kent returned to the vehicle a second time and inquired about the purpose of Defendant(2)'s travels and destination. Defendant(2) responded that he was coming from Yuma, and that he was traveling to Julian. Defendant(2) also stated that he was traveling to Julian to visit his uncle. Ranger Kent asked if Defendant(2) knew where his uncle lived in Julian, and Defendant(2) responded "no." After obtaining this information, Ranger Kent returned to his vehicle again to inform FICC of his status. When Ranger Kent returned to Defendant(2)'s vehicle, he again inquired about the purpose of Defendant(2)'s travels and inquired why Defendant(2) passed his uncle in such a dangerous manner. During this interaction, Defendant(2) stated the he did know that the driver of the van, and that it was his uncle. Defendant(2) also stated that he was helping his uncle move from Yuma to Julian, and that he lived in San Jose. Defendant (2) also stated that he passed his uncle because he was driving too slow. During this interaction, Ranger Kent noticed that Defendant(2)'s hands were trembling and he appeared to be very nervous.

Ranger Kent observed a camouflage two way radio on the passenger floor and a cell phone under the passenger seat. Ranger Kent asked for consent to search the vehicle. Although Defendant(2)'s response is not included in the report, this appears to be a scrivener's error, and not indicative of an absence of consent. While Ranger Kent was searching the vehicle, he heard radio traffic indicating that Rangers Nieblas and Cox performed a vehicle stop on Defendant(1). Ranger Kent radioed Ranger Nieblas that the stops were related and that Defendant(2) stated that he was traveling with Defendant(1). Ranger Nieblas responded that Defendant(1) denied knowing Defendant(2). Due to the inconsistencies, Ranger Kent escorted Defendant(2) to the area of the stop of Defendant(1). Upon arriving at the location of Defendant(1), Ranger Kent observed Rangers Nieblas and Cox removing the material witnesses from the box inside the van. Ranger Kent then placed Defendant(2) under arrest.

**2. <u>The Stop Is Supported by Reasonable Suspicion</u>**

The Fourth Amendment protects individuals from unreasonable searches and seizures by the Government. While investigatory stops are permitted, the protections of the Fourth

Amendment are extended to the investigatory stops. See Terry v. Ohio, 392 U.S. 1, 9 (1968). In order to have a valid investigatory stop, an officer must have a reasonable suspicion to believe that criminal activity is taking place. United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion exists when an officer is aware of specific, articulable facts, which, together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime. See United States v. Salinas, 940 F.2d 392, 394 (9th Cir. 1991). Reasonable suspicion need not be inconsistent with innocence. "The relevant inquiry is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." Sokolow, 490 U.S. at 10. In addition, an investigatory stop "may be justified on facts that do not amount to the probable cause required for an arrest." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975).

In Sokolow, the United States Supreme Court held the reasonable suspicion analysis is "not readily, or even usefully, reduced into a neat set of legal rules" and like probable cause, takes into account the totality of the circumstances. See Sokolow, 490 U.S. at 7-8. During review, the court must interpret the facts present in light of the officer's training and experience to determine if reasonable suspicion is valid. See Sokolow, 490 U.S. at 8. The seminal case of Brignoni-Ponce, 422 U.S. 873 (1975) is illustrative. In Brignoni-Ponce, the United States Supreme Court recognized the valid public interest in controlling the illegal entry of aliens at the border by stating,

> Because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion...The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

Id. at 881-882. The United States Supreme Court rationalized that "a requirement of reasonable suspicion for stops allows the Government adequate means of guarding the public interest and also protects residents of the border areas from indiscriminate official interference." Id. at 883.

In this case, Ranger Kent observed Defendant(2) pass the van in an unsafe manner by crossing double yellow lines in violation of California Vehicle Code §§ 21658 and 21460(a). Ranger Kent was justified in stopping the Defendant based upon the traffic violation.

**3. The Search Was Consensual**

Ranger Kent asked for consent to search Defendant(2)'s vehicle. That Ranger Kent did not include the fact that consent was granted in his report was almost certainly due to scrivener's error. Because Defendant(2) gave consent to search the vehicle, the items found during this search should not be suppressed. However, Ranger Kent did not get far into his search before halting the search and moving Defendant(2) to the location of the stop of Defendant(1).

**4. The Length of the Stop Was Justified**

While speaking with Defendant(2), Ranger Kent observed that Defendant(2) was displaying signs of nervousness. Although nervousness alone would be insufficient to justify a heightened level of suspicion, see United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001), it can be relevant when combined with other factors. See, e.g., United States v. Garcia-Rivera, 353 F.3d 788, 791 (9th Cir. 2003) ("Given [defendant's] furtive movement and inability to provide any valid documentation, the officer properly expanded the scope of the stop beyond the cracked windshield violation."); United States v. Chavez-Valenzuela, 268 F.3d 719, 724-26 (9th Cir. 2001) (extended detention and inquiry following a routine traffic stop was unreasonable where there were no objective and particularized factors arousing the officer's suspicion other than the defendant's nervousness). In this case, Ranger Kent noticed that Defendant(2) was nervous. Moreover, he had earlier seen Defendant(2) traveling in tandem with another vehicle, and Defendant(2) made several inconsistent statements regarding his destination and purpose for his travels.

During a stop, an officer may broaden his line of investigation or questioning if additional factors come up which give rise to reasonable suspicion of other criminal activity. United States v. Perez, 37 F.3d 510, 513 (9th Cir. 1994). That is what happened here. After the initial traffic stop, given the totality of other circumstances, Ranger Kent had a reasonable suspicion that other criminal activity may be afoot.

Considering the totality of these circumstances, United States v. Arvizu, 534 U.S. 266, 273 (2002), plus the fact that the stop occurred within close proximity to the Mexican border, Ranger Kent clearly developed additional, reasonable suspicion to extend the scope of the stop to investigate other possible violations. As such, his decision to move the stop to the other location was reasonable.

**5. Search of the Closed Container Was Proper**

After moving Defendant(2) to the location of Defendant(1), Ranger Kent placed Defendant(2) under arrest. At the time of the search of the closed container, Defendant(2) was already under arrest based upon probable cause. The search of the vehicle may extend to the entirety of the vehicle, and to closed containers in the vehicle that might contain contraband. See, e.g., California v. Acevedo, 500 U.S. 565 (1991); United States v. Ross, 456 U.S. 798 (1982). Moreover, the search of the backpack found inside the vehicle would be subject to inevitable discovery. The vehicle and all of its contents were seized pursuant to the arrest of Defendant(2). A subsequent inventory search of the vehicle and its contents would have revealed the items Defendant(2) now seeks to suppress.

Defendant's motion should be denied.

## VI

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Defendant's motion.

DATED: June 16, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHEONG SAU WONG(1),<br>XU JUN LEE(2),<br>Defendant. | Criminal Case No. 08CR0369-JLS<br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**

**1. SUPPRESS EVIDENCE.**

**.**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Leila Morgan, Esq., Federal Defenders of San Diego**
Leila_Morgan@fd.org
**Steven E. Feldman, Esq., Law Offices of Steven E. Feldman**,
sfeldman77@san.rr.com

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 16, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP